JOSEPHINE FRANCES SCOTT, Plaintiff-Appellant, *v.* PERONA, PERONA & TONOZZI, a Partnership, *et al.*, Defendants-Appellees.

Third District   No. 82—529

Opinion filed June 3, 1983.

STOUDER, P.J., dissenting.

Arthur R. Kingery and James R. Carter, both of Law Offices of Strodel, Kingery & Durree, Assoc., of Peoria, for appellant.

Paul M. Scoma and Watts C. Johnson, both of Johnson, Martin & Russell, P.C., of Princeton, for appellee First State Bank of Princeton.

Lyle W. Allen and Judy A. Schieber, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee Frank M. Bettasso, Sr.

JUSTICE SCOTT delivered the opinion of the court:

Hazel Ware died on January 18, 1975. Less than a year before her death, on May 24, 1974, Mrs. Ware had executed a trust agreement and pour-over will which became the subject of subsequent litigation. Named as trustees of the 1974 trust agreement were Frank M. Bettasso, Sr., and the First State Bank of Princeton. Bettasso and other members of his family were beneficiaries of the 1974 trust, as was the plaintiff here, Josephine Frances Scott.

In litigation that was ultimately resolved by this court with its decision in *Kelley v. First State Bank* (1980), 81 Ill. App. 3d 402, 401 N.E.2d 247, James Kelley and Ruth Kelley, beneficiaries under a 1965 will executed by Mrs. Ware, challenged the 1974 will and trust agreement. During the course of the litigation stemming from that dispute, offers of compromise were made by the Kelleys, but were rejected by trustee Bettasso. In our prior decision, we determined that the 1974 instruments were void because at the time they were executed, Mrs. Ware lacked testamentary capacity and was subject to undue influence. Mrs. Scott, who was willing to accept the offers of compromise made by the Kelleys in the prior litigation, has now returned to court to sue both trustees of the 1974 trust agreement, Mr. Bettasso and the First State Bank of Princeton, alleging that both breached a fiduciary duty to the beneficiaries of the trust in failing to accept the Kelleys' offers of compromise, which would have settled the prior dispute. Also named as a defendant in the action instituted by Mrs. Scott was the law firm of Perona, Perona and Tonozzi, attorneys for both Mrs. Scott and the co-trustees in the prior action. The circuit court of Bureau County, presented with motions to dismiss by the defendant co-trustees and the defendant attorneys, determined that in light of our prior decision finding Mrs. Ware lacked the capacity to create the 1974 trust, the purported trustees could not be charged with fiduciary responsibilities. Consequently, the circuit court dismissed the action against the defendant co-trustees, while denying the motion to dismiss of the defendant attorneys. Further, the circuit court found no just reason for delaying enforcement and appeal of its dismissal order. Mrs. Scott has elected to appeal.

In her brief filed before this court, Mrs. Scott has set forth nu-

merous statutory and judicial authorities which, she asserts, support the cause of action set out in her complaint against the defendant co-trustees. Fundamental to her position, Mrs. Scott urges that pursuant to statute, at the time the Kelleys made their offer of settlement, the co-trustees were empowered "to compromise, contest, prosecute or abandon claims or other charges in favor of or against the trust estate." (Ill. Rev. Stat. 1981, ch. 17, par. 1665.) According to Mrs. Scott, who relies on specific language in the Illinois Trust and Trustees Act, this power to compromise was extended to the trustees even "during any period in which any litigation [was] pending which [might] void or invalidate the trust in whole or in part or affect the rights, powers, duties or discretions of the trustee." (Ill. Rev. Stat. 1981, ch. 17, par. 1672.) Further developing her argument from the premise that the co-trustees had the power to compromise the prior litigation which would have invalidated the trust, Mrs. Scott cites a rule of law which requires that

> "A trustee must use care and diligence in the discharge of his powers and duties. He is held to a high standard of conduct and must exercise the utmost or highest good faith in the administration of the trust." (*In re Will of Hartzell* (1963), 43 Ill. App. 2d 118, 134, 192 N.E.2d 697, 706.)

Finally, Mrs. Scott avers in her complaint that the co-trustees failed to use care and diligence and abused the discretion vested in them by reason of their position as fiduciaries when they refused to consider any offers of settlement or to negotiate a settlement. Had the proposed settlement been effected, Mrs. Scott would have become a beneficiary of the Hazel Ware trust. Because no settlement was reached, the dispute over the 1974 instruments proceeded to a judicial resolution which invalidated the trust, a decision which had an adverse impact on the economic interest of Mrs. Scott. Of course, Mrs. Scott concludes that these adverse consequences could have been avoided if the trustees had exercised their power to compromise with care and diligence.

It seems certain that had the co-trustees been successful in upholding the 1974 will and trust agreement contested in the prior litigation with the Kelleys, Mrs. Scott would not be before the court today. It also seems likely that if the interested parties had accurately divined the outcome of that earlier lawsuit a different attitude towards settlement would have existed. We question whether the rule of law posited by Mrs. Scott, which would impose liability on the co-trustees for failing to accurately foretell judicial decisions, is a correct statement of the law in Illinois. Even if such were the rule, however,

the co-trustees are not liable for failing to exercise their discretion to compromise, that is, for failing to presage an adverse court decision and to forestall that decision's consequences by compromise, where in fact there was no power or discretion to compromise in the first instance. After reviewing the authorities cited by the defendants, we must agree that the co-trustees were without the power to compromise or settle the prior litigation under the facts as pleaded in the plaintiff's complaint.

In an early case, the Illinois Supreme Court considered the propriety of settlement agreements offered to resolve disputes over testamentary dispositions. (*Stephens v. Collison* (1916), 274 Ill. 389, 113 N.E. 691.) In the *Stephens* case, a dispute arose among the beneficiaries of a testamentary trust of the decedent, Josephus Martin. The dispute generated a substantial judicial history, coming before the Illinois High Court on two occasions prior to the instance which resulted in the decision cited above. When presented for review a third time, the issue decided was summarized as follows:

> "The real question in this case for our decision is whether or not a court of equity has the power and the authority to entirely disregard the terms of a trust created by a will and to compel a party interested in the trust property to accept a compromise settlement of the trust estate against his will and against his interest where all the other interested parties are willing and desire the settlement." (*Stephen v. Collison* (1916), 274 Ill. 389, 394, 113 N.E. 691, 693.)

In addition, the court considered these facts:

> "It cannot be questioned that the effect of the compromise and approval thereof by the court, and its decree ordering the parties to execute the compromise settlement upon the terms proposed, is to change the terms of the will of the testator, or, rather, to abrogate it altogether, and to vest title to the property devised by the will in trust, in the heirs and devisees according to the court's judgment of what is just and best for them. The only threatened calamity to the parties interested in the trust estate or to the property itself, so far as appears in this record, is that the validity of the will itself, and of certain deeds made by the testator just prior to the execution of the will, is being contested by the party proposing the settlement, and that the litigation has been long continued and expensive and is likely to be still continued." (274 Ill. 389, 394-95, 113 N.E. 691, 693-94.)

In light of these facts, the *Stephens* court resolved the issue first

posed in the following manner:

> "Plaintiff in error has in no way caused the litigation and has appeared to be entirely indifferent as to its results. But if he had been a principal instigator of the suits and not disposed at all to settle them on any terms, we know of no rule of law or equity by which a court could compel him to accept terms of settlement proposed by the other parties to the suit, no matter how much more it might, in fact, be to his and to their interests to so settle than to pursue the litigation to any possible conclusion." (274 Ill. 389, 395, 113 N.E. 691, 694.)

The holding to be gleaned from the *Stephens* case is that settlements of testamentary disputes which materially change the testamentary plan cannot be imposed, even where the settlement appears to be in the best interest of the parties, where one of those parties finds the settlement objectionable. This holding has been cited approvingly in subsequent decisions (*Northern Trust Co. v. Thompson* (1929), 336 Ill. 137, 168 N.E. 116; *Hubbard v. Buddemeier* (1927), 328 Ill. 76, 159 N.E. 229) and is to be distinguished from decisions ordering *de minimis* modifications of testamentary instruments to further the manifest intentions of the testator.

In the instant case, it is conceded in plaintiff's complaint that trustee Bettasso, also a beneficiary of Hazel Ware's 1974 testamentary trust, would have no part in the settlement which was proposed. That settlement would have resulted in material changes in the 1974 testamentary plan. Applying the rule of the *Stephens* case, it is apparent that the settlement of the prior litigation proposed by the Kelleys could not have been approved by the circuit court. The trustees cannot now be faulted for failing to accept a proposed settlement which could not have been approved and ratified by the circuit court. We believe this result attains even though Mr. Bettasso, the objecting beneficiary, also filled the additional role of trustee. The prerogative of each beneficiary to consent or to withhold consent is in no way diminished or surrendered simply because the beneficiary also serves as trustee. To conclude otherwise would disadvantage the trustee beneficiary in protecting his trust interest in any settlement which might be proposed.

Accordingly, we conclude that the circuit court correctly dismissed Mrs. Scott's complaint against the co-trustees. For the reason set forth, we affirm the decision reached below.

Affirmed.

ALLOY, J., concurs.

PRESIDING JUSTICE STOUDER, dissenting:

I differ with my colleagues as to the result of this appeal and, specifically, as to their application of *Stephens v. Collison* (1916), 274 Ill. 389, 113 N.E. 691, to the facts in this case.

The majority has chosen to affirm the trial court's decision on the basis of the law stated in *Stephens v. Collison* (1916), 274 Ill. 389, 113 N.E. 691. The theory of law upon which the holding in *Stephens* is based was first advanced on appeal by the defendant, the First State Bank of Princeton. The trial court based its ruling upon an entirely different theory of law, one which I believe did not justify the result reached by the trial court, namely, that the trustees of a trust subsequently determined to be void, have no fiduciary duties to the trust beneficiaries.

The court in *Stephens* held that equity could not compel the beneficiaries under a testamentary trust to accept a compromise settlement of a lawsuit which would so alter the terms of the trust that its purposes would be entirely defeated. In that case, one of the beneficiaries of a trust had proposed the settlement in an attempt to compromise litigation she had commenced against the estate of the decedent involving the validity of the will, itself, and certain deeds executed by the decedent.

The factual situation in the case at hand is different from that of *Stephens*. Here we have a beneficiary of a testamentary trust who is also a co-trustee, declining to compromise litigation brought by third parties attacking the validity of the will. Such a compromise could have preserved the basic terms of the trust. The fact that the objecting beneficiary was also a trustee and by statute had the power to compromise litigation which could void or invalidate the trust (Ill. Rev. Stat. 1981, ch. 17, pars. 1665, 1672) required that he, along with his co-trustee, submit any possible settlement proposal to the court for approval, otherwise, his dual role could place him in a position of conflict of interest and possibly result in breach of his fiduciary duties to the trust beneficiaries.

Based upon my analysis of this case, I believe that the trial court's order dismissing the action against the defendant co-trustees should be reversed.