DAVID C. DISHER, Plaintiff-Appellant, *v.* GIAN M. FULGONI *et al.*, Defendants-Appellees (Gerald J. Eskin *et al.*, Nominal Defendants-Appellees).

First District (2nd Division)   No. 83—2517

Opinion filed May 1, 1984.—Rehearing denied June 7, 1984.

Gary M. Elden, Daniel A. Edelman, and Gerald F. Lutkus, all of Reuben & Proctor, of Chicago, for appellant.

William E. Snyder, of Chadwell & Kayser, Ltd., of Chicago, for appellees.

JUSTICE DOWNING delivered the opinion of the court:

The issue in this case is whether, under Illinois law, an employee confidentiality agreement can be invalidated on the basis of being overly broad in scope and duration. Plaintiff, David C. Disher, contests the propriety of an order entered by the trial court denying his motion for preliminary injunctive relief. Plaintiff had sought, by virtue of this motion, to nullify or restrain enforceability of a confidentiality agreement executed by him while in the employ of Information Resources, Inc. (IRI), the corporate defendant in this action.

IRI is a marketing research company which designs, develops and maintains computer-based systems and services for the collection, as well as analysis, of market information on sales of packaged consumer goods. Essentially, IRI assists manufacturers of consumer goods in the testing and evaluation of their marketing plans for new products, media advertising, pricing and sales promotions.

In August 1981, plaintiff received an offer of employment from IRI, a Delaware corporation with its principal offices in Chicago. In order to commence working for IRI, plaintiff liquidated his marketing research business in Cincinnati, sold his home there and moved to Illinois. At the outset, plaintiff was employed by IRI as vice-president of operations; thereafter, he directed all market operations of "BehaviorScan," including market fieldwork, data input and in-market quality control. The "BehaviorScan" system measures the effect of different marketing strategies on product purchases and thereby enabled IRI to (1) target television advertisements over cable television to groups of preselected consumer panelists, (2) collect panelist purchase data through the use of supermarket "point-of-sale" scanners, and (3) analyze the effect of client advertising by means of IRI's computer systems.

At the time the instant action commenced, defendant Gian M. Fulgoni occupied the position of president and chief operating officer of IRI; defendant John L. Malec occupied the position of chairman of the board and chief executive officer of IRI; defendant William C.

Walter occupied the position of vice-chairman of the IRI board; and the nominal defendants, joined so as to purportedly necessitate the determination of certain issues to be raised before the trial court, all occupied various positions as employees of IRI.

On January 19, 1982, plaintiff signed what was entitled an "Employee Confidentiality Agreement" (the Agreement). When first presented with the Agreement, plaintiff objected to being a signatory on the grounds of vagueness and overbreadth; however, after he was told that the Agreement was a nonnegotiable condition of employment, plaintiff proceeded to sign it out of fear of losing his job.

Specifically, plaintiff agreed as signatory not to disclose IRI's trade secrets and confidential information to any third party. The restricted subject matter included, but was not limited to, client lists, marketing and business plans, computer programs and systems, test designs, IRI television converter specifications and lists,[1] panel household identifications,[2] matching routines,[3] analytical models used for projecting data obtained from various stores, and financial data, generally referred to as proprietary information. The Agreement further precluded disclosure to any third party of confidential information and trade secrets belonging to IRI's clients. All inventions, discoveries and improvements relating to IRI's business, which were conceived by plaintiff in his individual capacity as an IRI employee, or in conjunction with other IRI employees, were also regarded as being confidential and thus subject to the nondisclosure commitment. Finally, the Agreement included this statement: *"This agreement of confidentiality will survive my employment at IRI."* (Emphasis added.)

On April 6, 1983, plaintiff was informed that his services were no longer needed at IRI, and that he could use the company's offices for 90 days in order to assist his transition to another job. Regarding such future employment, plaintiff was first told that the IRI executives preferred that he not work for the Burke Companies. By early June 1983, this preferential restriction was expanded to include the A.C. Nielsen Company as well as SAMI,[4] a division of Time, Inc. Subsequent thereto, plaintiff received from IRI a four-page draft "letter agreement," dated June 22, 1983, which, amongst other things,

---

[1]Converters are devices attached to television sets which enabled IRI to target commercials to specific households.

[2]Panel household identifications are the names, addresses and identification numbers of households that participated in IRI's test marketing.

[3]A matching routine is the methodology whereby IRI created statistical samples for employing its cable television capability.

[4]No identification of this abbreviated name has been provided in the record.

stated: "It is the Executive Committee's view that it would be impossible for [plaintiff] to work for certain competitors in the near term without unfairly using confidential information adverse to the company's best interest." The letter then provided that plaintiff "will be under an obligation of nondisclosure of confidential information to any third party indefinitely, until that information otherwise becomes publicly known through legitimate origins." A precise recitation of such confidential information was regarded by the executive committee as being "beyond the scope of this (or any) agreement ***."

Following plaintiff's refusal to agree to the June 22 nondisclosure proposal, he received a Western Union mailgram on June 29, 1983, which ordered relinquishment of all IRI materials in his possession, denied him further access to IRI facilities and, for the second time, informed him that his employment with IRI was terminated.

Two interviews with the A.C. Nielsen Company resulted in an offer to plaintiff of employment as field operations manager; however, this offer was withdrawn on July 22, 1983, due to a letter sent by IRI's counsel, dated July 15, 1983, apprising A.C. Nielsen's general counsel of the existence and nature of the Agreement signed by plaintiff in 1982. This letter further indicated that IRI would enforce and maintain, to the fullest extent, its proprietary rights under the Agreement.

On July 27, 1983, plaintiff filed a verified complaint claiming, *inter alia*, tortious interference with prospective economic advantage. Injunctive relief was thus sought to restrain IRI and the individual defendants from enforcing the Agreement. On August 16, 1983, IRI filed a verified counterclaim requesting that plaintiff be enjoined from disclosing, or otherwise using, any trade secrets or other proprietary information received by plaintiff while in IRI's employ. This counterclaim further sought to preclude plaintiff from implementing any plans for the establishment of a competitive business.

On September 9, 1983, plaintiff agreed to a second employment offer from the A.C. Nielsen Company which was contingent on the entry, by October 15, 1983, of a declaratory judgment or an injunction invalidating or restraining enforcement of the Agreement. That same day, September 9, plaintiff filed an amended verified motion for preliminary injunctive relief which apprised the trial judge of the second employment offer. An evidentiary hearing on this motion commenced October 12, 1983. On October 14, 1983, following arguments by counsel, the trial court ruled that no basis existed by which it could grant injunctive relief. Acknowledging the novelty of plaintiff's theory, the court nonetheless found "confidential information of a substantial

sort" so as to obviate any likelihood of invalidation when a ruling on the merits would later be made. The trial court also held that the contract was not so overly broad that it should be nullified as a matter of law. It is the propriety of this determination which plaintiff now contests on appeal.

## I

The sole issue raised by plaintiff on review is whether, under Illinois law, an employee confidentiality agreement can be invalidated on the basis of being overly broad in scope and duration. We answer this question, one of first impression in Illinois, in the affirmative.

## A

As a general rule, Illinois courts have sought to encourage fair competition in the business sector in order to avoid restriction of an employee's freedom to pursue a particular occupation. (*Lincoln Towers Insurance Agency v. Farrell* (1981), 99 Ill. App. 3d 353, 355, 425 N.E.2d 1034; *TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 1004, 380 N.E.2d 963, *appeal denied* (1978), 71 Ill. 2d 621.) Since our free economy is based upon competition, one who has worked in a particular field cannot be compelled to erase from his mind all of the general skills, knowledge, acquaintances and overall expertise acquired during his tenure with the former employer. (*Revcor, Inc. v. Fame, Inc.* (1967), 85 Ill. App. 2d 350, 357, 228 N.E.2d 742; see also *Schulenburg v. Signatrol, Inc.* (1965), 33 Ill. 2d 379, 387, 212 N.E.2d 865, *cert. denied* (1966), 383 U.S. 959, 16 L. Ed. 2d 302, 86 S. Ct. 1225.) Our supreme court has held that where an employer seeks to enforce a palpably unfair and unconscionable agreement, there is no entitlement to the equitable remedies of injunction or specific performance. (*Victor Chemical Works v. Iliff* (1921), 299 Ill. 532, 551, 132 N.E. 806.) Consequently, "restraints have not been lightly placed upon an employee's right to compete in a field in which he is most familiar." *Lincoln Towers Insurance Agency v. Farrell* (1981), 99 Ill. App. 3d 353, 356, citing *ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 94, 273 N.E.2d 393.

■ It is an uncontroverted principle of law that the enforceability of a restrictive covenant in restraint of trade is conditioned upon its reasonableness in terms of the resultant effect upon the parties to the contract and the public. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 37, 225 N.E.2d 21.) Essentially, noncompetition agreements are not favored by law; Illinois public policy requires that their chronological and geographical limitations, as well as the business interests

they seek to protect, be carefully scrutinized by the courts. *Konicki v. Oak Brook Racquet Club, Inc.* (1982), 110 Ill. App. 3d 217, 223-24, 441 N.E.2d 1333; *Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 764-65, 424 N.E.2d 719.

■ Similarly, we believe Illinois public policy dictates that employee confidentiality agreements should be subject to careful scrutiny. These agreements, like covenants not to compete, affect State interests, *i.e.*, the flow of information necessary for competition among businesses. (*Nasco, Inc. v. Gimbert* (1977), 239 Ga. 675, 676, 238 S.E.2d 368, 369.) Hence, the validity of such agreements are to be determined in accordance with the public policy of the State of Illinois. This is to ensure that the restraint imposed will not cause undue hardship to the employee, and that it will not be greater than is necessary to protect the proprietary interests of the employer.

■ Therefore, in recognition of every individual's fundamental right to pursue that vocation in which he is most proficient, the instant confidentiality agreement can be enforced only if, as in the case of a noncompetition agreement: (1) the chronological and geographical limitations are reasonable; (2) the information sought to be protected is, in fact, confidential; and (3) the restriction is reasonably necessary for the protection of a legitimate proprietary interest. See *Konicki v. Oak Brook Racquet Club, Inc.* (1982), 110 Ill. App. 3d 217, 223-24; *Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 764-65.

## B

It was not until oral argument before this court that counsel for plaintiff finally clarified that he sought more than the mere resolution of the theoretical question of law addressed above. Specifically, plaintiff contests the propriety of the order entered by the trial judge denying his request for a preliminary injunction.

■ The function of the trial court in considering a motion for preliminary injunctive relief is to grant the injunction if it is established by a preponderance of the evidence that: (1) a certain and clearly ascertainable right exists which needs protection; (2) there is no adequate remedy at law; (3) irreparable injury will occur without the protection of an injunction; and (4) there is a reasonable likelihood of success on the merits of the case. (*Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 729, 451 N.E.2d 1338, *appeal denied* (1983), 96 Ill. 2d 540.) The trial court is vested with a large measure of discretion in the granting or denial of a preliminary injunction, and its determination will not be disturbed absent a showing of the abuse of that discretion. *Hayden's Sport Center, Inc. v. Johnson*

(1982), 109 Ill. App. 3d 1140, 1144-45, 441 N.E.2d 927.

In the present case, for plaintiff to prevail on his motion for a preliminary injunction, it was necessary for him to demonstrate a reasonable likelihood of success on the merits. The trial court held that plaintiff had failed to do so. We regard this conclusion to be incorrect, for plaintiff was not required to make out a case which would, in all event, warrant relief at the final hearing. (*MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 234, 445 N.E.2d 418, *appeal denied* (1983), 94 Ill. 2d 553.) Rather, plaintiff needed only to "raise a fair question as to the existence of the right claimed, lead the court to believe that he probably will be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable that the position of the parties should stay as they are until the court has had an opportunity to consider the case on the merits." *Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 500, 422 N.E.2d 1166, *appeal denied* (1981), 85 Ill. 2d 563.

■ Based on the record in the case at bar, we are of the opinion that plaintiff did, in fact, raise a fair question as to the invalidity of the nondisclosure agreement. The unconscionable nature of plaintiff's commitment is readily discernible. First, in order to begin working for IRI, plaintiff liquidated his marketing research business in Cincinnati, he sold his home there, and he then moved to Illinois. Second, in order to continue working for IRI, plaintiff was required to sign the Agreement as a *nonnegotiable* condition of his employment.

Even more palpably unfair is the fact that the Agreement, as written, contained neither chronologic or geographic limitation. We believe the lower court could have reasonably concluded that this unrealistic restriction as to time and place far exceeded what would have been necessary for the protection of IRI's legitimate proprietary interests.

In addition, plaintiff's duty of nondisclosure extended to "any third party." The subject matter of his obligation of confidentiality was explicitly left open-ended. Taken together, these terms further highlight the probability that plaintiff is entitled to have the Agreement declared null and void. Under no circumstances can we find that such broad, undefined restrictions had any reasonable relation to the orderly operation of the business of the corporate defendant joined in this action.

In essence, the Agreement's unlimited scope and duration strongly suggests that the Agreement contravenes Illinois public policy. Purely from the face of the document, plaintiff evinced a reasonable likelihood of success on the merits of the case. The inordinacy of

the duty of confidentiality that plaintiff was compelled to assume out of fear of losing his job made it appear advisable, in our opinion, that the respective positions of the parties should have remained as they were until consideration of the case on its merits. The lower court's denial of preliminary injunctive relief thus constituted an abuse of discretion.

For the reasons set out herein, we reverse the trial court's interlocutory order, and remand this cause to the circuit court of Cook County for further proceedings.

Reversed and remanded.

HARTMAN, P.J., and STAMOS, J., concur.