**David C. DISHER, Plaintiff,**

v.

**INFORMATION RESOURCES, INC., a Delaware corporation, John L. Malec, Gian M. Fulgoni, both individually and as voting trustee, William C. Walter, both individually and as voting trustee, Defendants.**

**No. 83 C 6964.**

United States District Court, N.D. Illinois, E.D.

May 27, 1988.

---

Katherine Rakowsky, Grippo & Elden, Chicago, Ill., for plaintiff.

William E. Snyder, Laura DiGiantonio, Chadwell & Kayser, Ltd., William J. Harte, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

### A. Background

For about five years this case and a parallel case in the state courts of Illinois have been pending. Some of the claims had exclusively federal jurisdiction and were brought only in this court. Other federal claims, although not exclusively federal, were also brought only in this court. A number of state claims were brought in both courts. Through various amendments, plaintiff, usually with the agreement or acquiescence of defendants, has attempted to leave all of his damages claims for this court. Three "trials" have been held before Judge Albert S. Porter of the Circuit Court of Cook County and the Illinois Appellate Court has issued two published opinions. The first "trial" was on plaintiff's motion for preliminary injunction enjoining the enforcement of a confidentiality agreement he had with his employer. The injunction was denied by the Circuit Court, but the Appellate Court remanded the case for further consideration of the preliminary injunction. *See Disher v. Fulgoni*, 124 Ill.App.3d 257, 79 Ill.Dec. 735, 464 N.E.2d 639, *appeal denied*, 101 Ill.2d 564 (1984). In the meantime discovery was proceeding in this court, but the court ordered the parties not to duplicate discovery that was being taken in the state court proceedings. In December 1984, this court

entered a judgment in favor of plaintiff dismissing defendant Information Resources, Inc.'s ("IRI") counterclaim. This court continued to monitor the status of this case while the state court proceeded to trials on the merits.

The Circuit Court bifurcated the case and conducted two trials. Disher succeeded on some claims and lost on others. Most important for him, he succeeded in having his stockholdings in IRI released from a voting trust. He also obtained a permanent injunction against enforcement of the confidentiality agreement. On appeal, the Circuit Court was affirmed in part and reversed in part, but Disher's success at having the stock released and the confidentiality agreement enjoined remained intact. The case was to be remanded to the Circuit Court for further proceedings and the Illinois Supreme Court only recently denied leave to appeal. *See Disher v. Fulgoni*, 161 Ill.App.3d 1, 112 Ill.Dec. 949, 514 N.E. 2d 767 (1987) ("*Disher II*"), *appeal denied*, 119 Ill.2d 555, 119 Ill.Dec. 384, 522 N.E.2d 1243 (April 7, 1988).

Following the decision in *Disher II*, the parties stipulated to the dismissal of Counts VI and VII and defendants have moved for summary judgment on all other Counts. Plaintiff has also conceded that Count V should be dismissed.

Plaintiff David Disher was formerly employed by defendant IRI. The other three defendants are officers or directors of IRI who were also trustees of a voting trust that is central to this litigation. Disher directed IRI's BehaviorScan program which involved market research through the use of consumer panelists, supermarket product scanners, and cable television. Through the scanners, the purchases of the panelists were monitored and through the cable television hookups with the panelists certain advertising could be directed toward different groups of panelists. From the data gathered, various conclusions could be made as to the effect of the advertising. This type of research was only feasible for companies who spent large sums on advertising, estimated to be about 150 companies in the United States. At the time Disher was discharged, A.C. Nielsen Company was considering establishing a competitive system.

When Disher started with IRI in 1981, he took a lower salary than he previously earned because of the opportunity to purchase IRI stock through stock option rights. In 1982, IRI wanted to buy out the shares of one of its founders, Penny Baron, but did not have sufficient capital to do so. Instead, certain employees, including Disher, were given the opportunity to surrender their option rights in return for the ability to purchase twice as many shares of Baron stock. IRI arranged partial financing and paid interest on the loans. The employees were required to place the stock in a voting trust of which defendants were the trustees. Defendant Fulgoni acted as Disher's agent in purchasing the stock for Baron and placing it in the voting trust. The details of this arrangement are described in *Disher II*, 112 Ill.Dec. at 951–52, 514 N.E. 2d at 769–70. In February 1982, Disher purchased 1,000 shares. In April he was promoted and was able to purchase 500 more shares under the same conditions as the original purchase.

Disher was discharged in April 1983 and sought to obtain release of his stockholdings, but was unable to. IRI offered to seek to get his stock for him if he would sign a noncompetition agreement, but he declined the offer. Disher was offered a position with A.C. Nielsen, but after A.C. Nielsen received correspondence from IRI, the offer was made conditional on rescinding a confidentiality agreement Disher had with IRI. Although Disher ultimately succeeded in having the state court enjoin enforcement of the confidentiality agreement, he never obtained the job with A.C. Nielsen. Without adequate income, Disher eventually had to sell off his property, including his home. Disher eventually succeeded at having the voting trust rescinded and the stock he had purchased for $18,000 was sold for over $1,000,000. However, Disher had earlier demanded that it be sold at the time individual shares were selling for about $6 more. Had he been able to sell at that time, he would have sold the stock for about $236,000 more.

### B. Count I—Securities Fraud

Count I alleges a federal claim for securities fraud. Defendants claim this Count should be dismissed because the undisputed facts show Disher suffered no damage. They argue he instead made a profit of more than $1,000,000. Disher argues he lost $236,000 by not being able to sell his shares when he wanted to and that he also suffered consequential damages of having to sell his home and other property below market value due to his lack of financial resources. For purposes of deciding the present motion, it is assumed that defendants induced plaintiff to trade his stock options for the right to purchase Baron stock by falsely representing that the voting trust would end when the stock began to be publicly traded. There were also other alleged false representations, but they need not be delineated.

Plaintiff does not point to evidence that he was induced to enter into the voting trust separate from the arrangement to purchase the Baron stock. He also points to no evidence that he could have purchased the Baron stock without entering into a voting trust. Therefore it must be assumed, as is alleged in paragraph 18 of plaintiff's amended complaint, that the false representation about voting trusts was for the purpose of inducing plaintiff to enter into the transaction involving Baron stock. If Disher had not entered into the transaction, he would have had only half as much stock under his prior stock option plan. Even if he had sold that amount at the highest price, it would have been worth less than the amount he was able to sell at a lower price in September 1985 since the price of a share had not dropped over 50% from the highest price. Additionally, plaintiff has not shown an amount of consequential damages that exceeds the greater profit he made by being able to purchase twice as many shares.

Plaintiff correctly argues that the general rule is that a securities fraud plaintiff is to be placed in the same position as he would have been had there been no fraud. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155, 92 S.Ct. 1456, 1473, 31 L.Ed.2d 741 (1972). This includes that such a plaintiff is entitled to profit to the full extent that he would have profited had there been no fraud. *Levine v. Futransky*, 636 F.Supp. 899, 900 (N.D. Ill.1986). The plaintiff is limited to actual damages, except where the defendant's profit from the transaction exceeds the plaintiff's actual damages. *See Affiliated Ute*, 406 U.S. at 155, 92 S.Ct. at 1473; *Harris Trust & Savings Bank v. Ellis*, 810 F.2d 700, 706–07 (7th Cir.1987); *Torres v. Borzelleca*, 641 F.Supp. 542, 544–45 (E.D. Pa.1986). The plaintiff is not entitled to the full benefit of his bargain, *Madigan, Inc. v. Goodman*, 498 F.2d 233, 239–40 (7th Cir.1974), except where necessary to prevent unjust enrichment of the defendant. *Hackbart v. Holmes*, 675 F.2d 1114, 1122 (10th Cir.1982).

As discussed above, plaintiff has not suffered any actual loss. Had he not been induced to trade his rights under the stock option plans for his right to purchase Baron stock, his profits would have been less than they actually were. Plaintiff has not shown that he is entitled to the full benefit of his bargain because defendants would otherwise be unjustly enriched. Instead, plaintiff tries to separate out the fraud regarding the voting trust from the fraud inducing the purchase. Such a split, however, is inconsistent with the facts. Also, one of the cases relied on by plaintiff is contrary to plaintiff's argument. *Abrahamson v. Fleschner*, 568 F.2d 862, 878–79 (2d Cir.1977), *cert. denied*, 436 U.S. 905, 913, 98 S.Ct. 2236, 56 L.Ed.2d 403 (1978), holds that a plaintiff cannot recover for losses and ignore profits where both result from a single wrong. Instead, under *Abrahamson*, a plaintiff can only recover for net losses occurring after the fraud was committed. In this case, plaintiff was purportedly fraudulently induced into purchasing the stock. All profits and losses occurred after the fraud was committed and must be netted against each other. Other cases cited by plaintiff are not to the contrary. Since plaintiff has not suffered any damages, Count I is dismissed. *See Etsho-*

*kin v. Texasgulf, Inc.*, 612 F.Supp. 1220 (N.D.Ill.1985).

## C. Count II & VIII—Antitrust Violations

Count II alleges federal antitrust violations and Count VIII alleges violations of Illinois antitrust provisions. The Illinois law tracks federal law. *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 480–81 (7th Cir.1988). As did the parties, the court applies the same rules to both Counts. Defendants have presented a number of grounds for dismissing the antitrust Counts. It is only necessary to discuss antitrust injury and standing.

Plaintiff alleges that defendants sought to monopolize the market for the Behavior-Scan system. Plaintiff also alleges that one tactic for monopolizing the market was forcing IRI employees to sign overbroad confidentiality agreements. For purposes of deciding the present motion, defendants concede these allegations are true. Plaintiff claims he was injured when defendants informed A.C. Nielsen and other potential employers about the confidentiality agreement. A.C. Nielsen declined to hire plaintiff to avoid litigation over trade secrets.

Plaintiff is alleging an attempt to monopolize the market for IRI's BehaviorScan system. While he refers to "anticompetitive" labor market tactics, he has not alleged in his complaint, or shown by citation to admissible evidence, that IRI also sought control over part or all of the relevant labor market. *Radovich v. National Football League*, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957), even if still good precedent despite more recent cases on the issue of antitrust standing, does not apply to the present case. Instead, plaintiff's standing must be based on the alleged monopolization of the BehaviorScan market.[1]

■ Antitrust plaintiffs "must show more than simply an 'injury causally linked' to an antitrust violation; instead 'plaintiffs must prove *antitrust injury*, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.'" *Southwest Suburban Board of Realtors, Inc. v. Beverly Area Planning Association*, 830 F.2d 1374, 1377 (7th Cir.1987) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977)). *Accord Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 S.Ct. 484, 489, 93 L.Ed.2d 427 (1986). Antitrust injury alone does not satisfy the standing requirement. Even if suffering antitrust injury, the plaintiff must be a proper plaintiff under § 4 of the Clayton Act, 15 U.S.C. § 15. *Id.*

■ The first inquiry is whether the injury sustained by plaintiff was "the type the antitrust laws were intended to prevent." *Beverly*, 830 F.2d at 1379 (quoting *Brunswick*, 429 U.S. at 489, 97 S.Ct. at 697). The Sherman Act is intended to assure customers the benefit of price competition and protect the economic freedom of participants in the market. *Id.* at 1379 (quoting *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 538, 103 S.Ct. 897, 908–09, 74 L.Ed.2d 723 (1983)). The relevant market in the present case involves the provision of BehaviorScan-type services. Disher was not a participant in the market; he neither provides such services nor purchases them. *See Beverly*, 830 F.2d at 1379. Also, the purported monopolization was directed not at Disher, but at A.C. Nielsen and other competitors. *Cf. id.* That defendants took direct action against Disher does not change the analysis. *Cf. id.* (attempt to control brokerage services by boycotting a listing service does not make the listing service's injury an antitrust injury). Plaintiff did not suffer antitrust injury and therefore cannot bring an antitrust action. Even if plaintiff's injuries could be found to be antitrust

---

1. One of defendants' other grounds for dismissal is the failure to establish a relevant market. References in this opinion to a BehaviorScan market should not be interpreted as implicitly holding a relevant market has been shown. To the contrary, the court agrees with defendants that plaintiff has not shown a relevant market. That issue, however, need not be fully discussed since it is held plaintiff lacked antitrust injury and standing.

injuries, he would not have standing. IRI's competitors and customers, who suffer a more direct injury than Disher, are far more appropriate parties for bringing the action. It is unnecessary to grant standing to employees such as Disher. *See id.* at 1379–80. Counts II and VIII are dismissed.

### D. Jurisdiction Over State Law Claims

Before turning to the next Count, there must be a brief digression to discuss jurisdiction. Disher originally filed a two-count complaint against all four defendants alleging federal securities fraud and federal antitrust violations. At the time, all parties were citizens of Illinois for purposes of determining diversity jurisdiction. Disher subsequently established Ohio as his new place of residence. He then amended his complaint to add additional federal claims and also state law claims. All the new claims arose out of the same conduct, transactions, or occurrences alleged in the original complaint. The state law claims were then alleged to be before the court on both diversity jurisdiction and pendent jurisdiction.

■ It is a well-settled rule that diversity of citizenship is determined as of the date the action is commenced. *Fidelity & Deposit Co. of Maryland v. City of Sheboygan Falls,* 713 F.2d 1261, 1266 (7th Cir.1983); *Benskin v. Addison Township,* 635 F.Supp. 1014, 1017 (N.D.Ill.1986); C.A. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3608 (2d ed. 1984). At the time plaintiff commenced this suit, there was no diversity of citizenship between the parties and therefore no basis for diversity jurisdiction. It does not matter that plaintiff amended his complaint after he moved to Ohio. The amendment relates back to the date the lawsuit was commenced. *See* Fed.R.Civ.P. 15(c). There still was no diversity jurisdiction. *Oliney v. Gardner,* 771 F.2d 856, 858–59 (5th Cir.1985); Wright, Miller, & Cooper, § 3608 at 458–59. There is no diversity jurisdiction over Disher's state law claims;

there is only pendent jurisdiction over those claims.

■ The ordinary rule for pendent jurisdiction is that all remaining pendent claims are dismissed for lack of subject matter jurisdiction if all the federal claims are dismissed before trial. *Moses v. County of Kenosha,* 826 F.2d 708, 710 (7th Cir. 1987) (per curiam). Since all of Disher's federal claims are being dismissed, the court ordinarily would not reach the merits of the pendent claims. There are, however, two exceptions that apply to the present case. Since the state antitrust claim is governed by the same rule that requires dismissal of the federal antitrust claim, it is proper to dismiss the state antitrust claim on its merits. *Mechmet v. Four Seasons Hotels, Ltd.,* 825 F.2d 1173, 1178 (7th Cir. 1987). The other applicable exception is judicial economy. "Judicial economy, the essential policy behind the modern doctrine of pendent jurisdiction which [*United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)] created, supports the retention of pendent jurisdiction in any case where substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Graf v. Elgin, Joliet & Eastern Railway Co.,* 790 F.2d 1341, 1347–48 (7th Cir.1986). *Accord Moses,* 826 F.2d at 711.

■ The present case has been before this court since 1983. At the same time, related state proceedings have been conducted which appear to be reaching a final stage. *See Disher II, supra.* The state proceedings could not resolve all the disputed claims since one of the claims was an exclusively federal claim. The exclusively federal claim and the other federal claims, however, are now being dismissed from the federal action. Some of the state law claims, though, were also left for resolution in this court. Since (a) this case has been pending in this court for about five years and (b) the remaining state law claim forms the partial basis of the federal racketeering claim and resolution of that state law claim affects the racketeering claim, the court finds this to be an appro-

priate case for exercising its discretion to retain jurisdiction over the pendent claims, despite the dismissal of the federal claims, for purposes of resolving the present motion for summary judgment. *See Graf*, 790 F.2d at 1348.

### E. Count IV—Breach of Fiduciary Duty

Count IV alleges a state law claim for breach of fiduciary duties. Defendants Fulgoni and Walter allegedly breached their duties as trustees of the voting trust by (i) inducing plaintiff to deposit the IRI shares into the voting trust through material misrepresentations and omissions; (ii) conditioning the release of plaintiff's stock upon plaintiff executing a covenant not to compete; (iii) refusing to rescind the trust and return plaintiff's stock to him after he made a timely demand under Ill.Rev.Stat. ch. 121½, ¶ 137.13; and (iv) allowing all holders of voting trust certificates except plaintiff to exchange some of their certificates for stock in early 1984. Count I of Disher's state court complaint alleged (i), Count VIII alleged (iii) as an action for rescission for the violation of Illinois's securities law, and Count IX alleged (iv).[2] The allegation regarding the covenant not to compete may have been part of the allegedly outrageous manner in which plaintiff was terminated which was incorporated into Count VII for wrongful termination of employment. Prior to trial in state court, the parties entered into an agreed order dismissing the damages aspect of Count I without prejudice and dismissing Count VII without prejudice.

After the second trial, the Circuit Court entered a judgment dismissing Counts I and VIII with prejudice. Regarding Count I, the court found no violation of duty by defendants as to the purchase of the stock and the formation of the voting trust. Regarding Count VIII, the court found the securities exempt from registration and therefore rescission could not be obtained based on no registration. The court en-

tered judgment for plaintiff on Count IX, ordering defendants to release all of plaintiff's shares still held in trust. The court found defendants Fulgoni and Walter had breached their fiduciary duty by failing to include plaintiff in the decision to amend the voting trust. Both sides appealed. The Appellate Court affirmed the trial court's judgment for plaintiff on Count IX. *Disher II*, 514 N.E.2d at 775–76. The question of whether rescission was a proper remedy was held to be moot. *Id.* at 776–77. Plaintiff had appealed the judgment against him on Count I, but had informed the Appellate Court that reaching that issue was unnecessary if it was otherwise held that the trust should be rescinded. The Appellate Court therefore never considered the issues concerning Count I. As for Count VIII, the securities were held not exempt from registration and ¶ 137.13 was held to be applicable. The Appellate Court reversed the judgment against plaintiff on Count VIII, remanding it to the Circuit Court to consider appropriate relief. *Id.* at 773–74.

Defendants argue that any claim as to misrepresentations in the formation of the voting trust is barred by *res judicata* in that the Circuit Court entered a judgment against plaintiff on Count I of the state complaint and that judgment was not reversed. The parties, however, agreed to dismiss the damages claim of Count I without prejudice. In determining the effect of the state court judgment, this court must give that judgment the same preclusive effect it would have in the courts of Illinois. *Wozniak v. County of DuPage*, 845 F.2d 677, 680 (7th Cir.1988); *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir.1987). Ordinarily, *res judicata* bars all issues that were raised or could have been raised. *Wozniak*, 845 F.2d at 681; *Rebarchak*, 814 F.2d at 1222. Illinois ordinarily does not permit the splitting of causes of action. *Wozniak*, 845 F.2d at 681; *Rebarchak*, 814 F.2d at 1224. However, where the parties agree to dismiss certain claims, parts of claims, or forms of relief

---

**2.** The four aspects of Count IV will hereafter be referred to as Counts IV(i), IV(ii), IV(iii) and IV(iv).

without prejudice, *res judicata* will not bar raising those claims or parts of claims in a subsequent proceeding. *See id.* at 1225–26; *Restatement (Second) of Judgments* § 26(1)(a) (1982). Plaintiff's claim is not barred by *res judicata.*

▮ It is still possible, though, that the misrepresentation claim is barred by collateral estoppel. The elements of collateral estoppel are:

1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

*Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987). *See also Wozniak,* 845 F.2d at 682–83. Plaintiff argues the third element is not satisfied since it was unnecessary for the Appellate Court to resolve the issues concerning Count I. The court agrees that collateral estoppel does not apply to preclude issues determined by the trial court as to Count I since the Appellate Court found it unnecessary to reach any issues involving Count I. *See County of Cook v. Lynch,* 648 F.Supp. 738, 740–41 (N.D.Ill.1986) (quoting *Restatement (Second) of Judgments* § 27 comment o).[3]

▮ Plaintiff, on the other hand, argues that the state court judgment is *res judicata* as to breach of fiduciary duty in that plaintiff was successful on Counts VIII and IX of his state complaint.[4] Plaintiff, however, points to no order or stipulation reserving his damages claims as to Counts VIII and IX for later adjudication. Under the rule against splitting causes of action, his damages claims would be barred by *res judicata* even though he succeeded on his claims for injunctive relief. *See Wozniak, supra; Rebarchak, supra.* But perhaps the parties agreed to separate the damages claims related to Counts VIII and IX and leave them for another proceeding.[5] Defendants do not raise *res judicata* as to the federal claims related to state Counts VIII and IX and therefore it will not be applied in their favor. It is clear, though, that *res judicata* does not apply in plaintiff's favor.

Plaintiff's discussion of the issue confuses *res judicata* with collateral estoppel. The court will consider whether collateral estoppel applies to certain issues specifically raised by plaintiff. It is clear that all the elements of collateral estoppel are satisfied as to state Count IX. Therefore, defendants Walter and Fulgoni cannot dispute that they breached their fiduciary duties in allowing other holders of voting trust certificates, but not plaintiff, to exchange some of their certificates for stock in early 1984. As for Count IV(iii), the question is whether the issues are the same. State Count VIII was a claim for rescission under Illinois's securities law and federal Count IV is an alleged breach of fiduciary duty. Defendants Walter and Fulgoni—who were the only defendants to Count VIII—are only precluded from con-

---

3. If Disher had waived his opportunity to appeal Count I, there very well may have been an estoppel effect. This court, however, does not find Disher waived his appeal of Count I. Disher only made clear to the Appellate Court which appellate issues involved duplicative relief and therefore would not have to be reached if Disher was successful on one of the other issues. *See* Brief of Plaintiff–Appellant David C. Disher at 3–5, reproduced in Defendant's Supplementary Appendix at 10–12. Disher will not be penalized for aiding the Appellate Court by pointing out the overlap and relationship between issues.

4. Count IX was added in an amendment to conform the pleadings to the judgment. A copy of this amendment was not provided to the court, but presumably Count IX was only a claim for injunctive relief. *See* Transcript of July 18, 1985 proceedings before Judge Porter at 15, Defendants' Appendix at 201. Count VIII only sought rescission and delivery of the stock certificates as relief.

5. At a state court hearing on July 18, 1985, defendants' attorney referred to plaintiff amending his complaints to present damages claims in federal court only. Plaintiff's attorney referred to this being done by agreement. Defendants' attorney did not concede the amendments had been done by agreement, but also did not dispute that they had been. Judge Porter stated he would not go on to consider damages if nothing further was to be presented. *Id.* at 15–16, Defendants' Appendix at 201–02. Under the *Restatement,* acquiescence as well as agreement can result in the splitting of a cause of action. *Id.* § 26(1)(a).

testing that plaintiff had the right to rescind the voting trust under Illinois law. They can still contest whether their refusal to rescind the trust was a breach of fiduciary duty. In discussing claims concerning whether Disher's confidentiality agreement with IRI was enforceable, the Appellate Court stated that IRI's attempt to merge the confidentiality agreement into a non-competition restrictive covenant "would have rendered Disher substantially unemployable in his chosen profession." *Disher II*, 112 Ill.Dec. at 952, 514 N.E.2d at 780. The court did not make a finding that the proposed covenant was an attempted extortion. Moreover, the "finding" as to the hypothetical effect of the restrictive covenant was not essential to the court's ruling that the confidentiality agreement—not the covenant—was overbroad. Disher can rely on no collateral estoppel effect as to this issue.

The court will consider each aspect of Count IV in turn.

■ Count IV(i) alleges plaintiff was induced into entering into the voting trust through material misrepresentations. As with the securities fraud claims, defendants argue that plaintiff made a profit and therefore can prove no damages. Plaintiff does not argue that Illinois law as to damages for fiduciary breaches is different from federal securities law as regards compensatory damages in this case. As discussed above, plaintiff cannot show he suffered a loss in being induced into entering into the voting trust. He therefore suffered no compensatory damages. He argues, however, that he is also entitled to punitive damages under Illinois law. But Illinois does not permit a claim for punitive damages where no actual damage is shown. *McGrew v. Heinold Commodities, Inc.*, 147 Ill.App.3d 104, 100 Ill.Dec. 446, 536, 497 N.E.2d 424, 494 (1986); *Florsheim v. Travelers Indemnity Co. of Illinois*, 75 Ill.App.3d 298, 30 Ill.Dec. 876, 886, 393 N.E.2d 1223, 1233 (1979). Count IV(i) is dismissed.

■ Count IV(ii) alleges defendants conditioned the release of plaintiff's stock upon plaintiff executing a restrictive covenant not to compete. Defendants argue, among other things, that the restrictive covenant was never entered into and therefore the proposal caused Disher no injury. Disher does not dispute this. Therefore Count IV(ii) is dismissed. Disher can obtain no damages as regards the proposed restrictive covenant. The court is not ruling on whether the alleged facts as to the restrictive covenant are otherwise admissible to show motive or intent, or for some other purpose.

Count IV(iii) alleges defendants improperly refused to rescind the trust after Disher made a timely demand for rescission under Illinois law. As discussed above, defendants cannot contest that they should have honored Disher's request. They argue, however, that their refusal to honor the request is not a breach of fiduciary duty. They argue the statutory obligation to rescind in circumstances of the type in this case apply to all sellers and refusal to rescind is a statutory violation, not a fiduciary breach. Defendants cite no cases in support of this view. Plaintiff argues that violation of a statute can also be a breach of fiduciary duty. As an example, he argues that conversion of funds held by a fiduciary, which is also a statutory theft violation, is a breach of fiduciary duty. The only case cited by plaintiff is inapposite and does not even support the example cited by plaintiff.

■ Paragraph 137.13 provides a civil remedy for sales of securities in violation of Illinois's Securities Act. It provides for rescission, not damages. *See Peoria Union Stock Yards Co. Retirement Plan v. Penn Mutual Life Insurance Co.*, 698 F.2d 320, 324 (7th Cir.1983); *Renovitch v. Stewardship Concepts, Inc.*, 654 F.Supp. 353, 359 (N.D.Ill.1987). It further provides that a purchaser seeking rescission can obtain his or her attorney's fees incurred in an action brought pursuant to ¶ 137.13. Plaintiff, however, is not making a claim under Illinois's securities law. His claim is one for breach of fiduciary duty. It is inapposite for defendants to argue ¶ 137.13 only provides certain remedies when plaintiff is not seeking remedies under the statute.

Plaintiff, in this claim, is not seeking relief for the securities law violation—that is the registration problem—but is seeking relief for a fiduciary not following the procedures required by ¶ 137.13.

 This issue is not adequately briefed by either side, but the burden is on movants to show they are entitled to summary judgment. Therefore the court should not dismiss the claim on this argument. In any event, the court believes this aspect of plaintiff's claim should not be dismissed. A trustee has a duty to reasonably defend the trust against a suit for rescission. A.W. Scott, *Law of Trusts* § 178 at 1429 (3d ed. 1967). Also, fiduciaries will not ordinarily be held liable for incorrectly speculating as to the results of a lawsuit. *See Scott v. Perona, Perona & Tonozzi*, 115 Ill.App.3d 76, 70 Ill.Dec. 811, 813, 450 N.E.2d 24, 26 (1983). But a fiduciary must act reasonably and in good faith. That the trial court held that the securities were exempt from registration indicates the trustee's position was reasonable. However, Disher claims the trustees acted unreasonably and with disloyalty toward him. Defendants do not argue the uncontested facts are to the contrary. Therefore, it must be assumed that defendants acted unreasonably and with disloyalty.

 Defendants also argue that Disher cannot pursue his claim for breach of fiduciary duty because the trust was found to be void *ab initio* and was rescinded. Illinois law, however, provides that a trustee's duties remain in effect even during a period in which litigation seeks to void or invalidate a trust. Ill.Rev.Stat. ch. 17, ¶ 1672. The issue raised by defendants here was also raised by the defendants in *Scott*, a case not cited by the parties but which appears to be the only case considering the issue. The trial court held that a claim for breach of fiduciary duty cannot be maintained where the underlying trust has been determined to be void. The majority on the Appellate Court appears to have believed otherwise, but reaching that issue was not necessary to its decision. *See Scott*, 70 Ill.Dec. at 812–13, 450 N.E.2d at 25–26. The dissent, however, found it necessary to

reach the issue and held the trial court had been wrong. *Id.* at 814, 450 N.E.2d at 27 (Stouder, P.J., dissenting). This court holds that a claim for breach of fiduciary duty can be maintained even if the agreement creating the fiduciary relationship is subsequently held to be void since, at the time the breach occurs, the fiduciary was bound to perform his or her fiduciary duties. Additionally, as plaintiff points out, the Appellate Court in *Disher II* found both that the trust was void and that fiduciary duties were breached. The issue now raised was not expressly considered by the Appellate Court, but defendants make no argument here that they had no opportunity to make the argument before the Appellate Court. At least as to Count IV(iv), which was also claimed in state court, if not Count IV(iii) as well, defendants are estopped from arguing they could not have breached fiduciary duties because the trust agreement was voided. Count IV(iii) cannot be dismissed on the merits.

Count IV(iv) alleges defendants Fulgoni and Walter breached their fiduciary duties in amending the trust without involving Disher. The state court has already found this to be a breach of fiduciary duty and as a result ordered defendants to release Disher's shares. As already discussed, plaintiff can raise this claim even if the trust agreement was void *ab initio*. Defendants also argue that plaintiff has not alleged any damages as regards this aspect of the claim. Defendants, however, took action that permitted some beneficiaries of the trust to withdraw shares while not permitting Disher and others to do so. The state court found this to be a breach of the duty of loyalty and impartiality entitling Disher to withdraw all his shares. Had plaintiff been able to withdraw all or part of his shares at the time of the breach, he may have been able to sell at a higher price and might not have been put in the situation where he had to sell off personal assets. Count IV(iv) cannot be dismissed.

### F. Count III—RICO

Count III alleges a claim under the Racketeer Influenced and Corrupt Organiza-

tions Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The purported predicate acts are securities fraud, wire fraud, and mail fraud. Defendants again argue plaintiff has not shown he was damaged. If the predicate acts are limited to the securities fraud alleged in Count I (which also constitutes mail and wire fraud), then plaintiff has not shown any damages. Plaintiff argues, however, that the breaches of fiduciary duty can also constitute mail and wire fraud. The securities fraud induced plaintiff to enter into the voting trust and, as already discussed, plaintiff did not suffer a loss by entering into that arrangement and therefore incurred no damages. The fiduciary breaches that remain, however, did not cause plaintiff to enter into the trust agreement, but instead prevented him from withdrawing at a time when IRI shares were at a higher value. The fiduciary breaches therefore caused damage. If they can constitute RICO predicate acts, then plaintiff will still have a viable RICO claim if he can overcome defendants' other challenges to the RICO claim.

■ Not every common law breach of fiduciary duty that involves mailings or use of the telephone constitutes a violation of the mail and wire fraud statutes. *See United States v. Kwiat,* 817 F.2d 440, 444 (7th Cir.), *cert. denied,* 477 U.S. ——, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987). The scheme to defraud element of those crimes must still be satisfied. *See United States v. Wellman,* 830 F.2d 1453, 1461 (7th Cir. 1987). "The scheme need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omissions calculated to deceive persons of ordinary prudence and comprehension." *Id.* at 1462 (quoting *United States v. Pearlstein,* 576 F.2d 531, 535 (3d Cir.1978)). *See also*

*United States v. Dial,* 757 F.2d 163, 170 (7th Cir.), *cert. denied,* 474 U.S. 838, 106 S.Ct. 116, 88 L.Ed.2d 95 (1985) (concealment). Also, in light of the Supreme Court's recent decision in *McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the scheme must be one to obtain money or property from the victim. *Wellman,* 830 F.2d at 1462; *United States v. Holzer,* 840 F.2d 1343, 1348 (7th Cir.1988); [6] *United States v. Lytle,* 677 F.Supp. 1370, 1381–84 (N.D.Ill.1988).

Plaintiff's reliance on *Dial* is misplaced. In *Dial,* the defendant broker breached his fiduciary duty to his customers by trading on his own account ahead of his customers' accounts. The portion of the opinion cited by plaintiff refers to fraud in soliciting customers in that Dial implicitly represented to his customers he would seek the best price for them, a representation contrary to his breach of fiduciary duty. 757 F.2d at 168. To the extent Disher was induced into the trust agreement by misrepresentations as to when he could pull his shares out of the trust, he has suffered no damage since, as already discussed, he did not suffer a loss on the transaction. In *Dial,* there were also misrepresentations at the time transactions were made on the customers' accounts. These misrepresentations, which were independent of the breaches of fiduciary duty, caused losses for the customers. *Id.* at 169. Disher can only rely on the fiduciary breaches as being fraud that caused him damage if the breaches themselves were misrepresentations or some other type of fraud. He, however, only argues that the fiduciary breaches were part of a scheme to induce him to enter into the trust agreement.[7] He did not incur any damages as a result of that scheme.[8]

---

**6.** Plaintiff relies in part on *United States v. Runnels,* 833 F.2d 1183 (6th Cir.1987), *modified in part,* 842 F.2d 909 (6th Cir.1988), *rehearing granted & opinion vacated,* No. 86–1923 (6th Cir. May 3, 1988). *Runnels* is not considered because, after plaintiff filed his brief, the Seventh Circuit rejected the holding in *Runnels. See Holzer,* 840 F.2d at 1347–48. Also the Sixth Circuit recently granted another rehearing in *Runnels.*

**7.** Recent cases hold that breaches of fiduciary duties do not constitute mail or wire fraud under the theory that the victim is deprived of honest and loyal services. *See Holzer,* 840 F.2d at 1343; *Lytle,* 677 F.Supp. at 1381–84. Those cases, however, involve the question of whether there was a scheme to obtain money or property. They do not involve the question of whether the fiduciary breach constitutes fraud.

**8.** Without developing any argument and without citing any predicate act other than mail or

Plaintiff did not suffer any damages as a result of any purported RICO violations and therefore Count III is dismissed. It is unnecessary to consider defendants' other grounds for dismissing this Count.

### G. Conclusion

All of plaintiff's claims are dismissed with prejudice except Counts IV(iii) and IV(iv) against Walter and Fulgoni. These are state law claims. It was determined that it was appropriate to consider the merits of the state law claims for purposes of deciding the motion for summary judgment. The court, however, does not believe it is appropriate to retain jurisdiction over Counts IV(iii) and IV(iv) for further proceedings. As already discussed, the ordinary rule is to dismiss pendent state law claims when the federal claims are dismissed before trial. Judicial economy was served by resolving all issues—federal and state—in the motion for summary judgment. It will not be further served by retaining jurisdiction over the state law claims. The state court had a trial on the merits of a claim identical to Count IV(iv). The state court was ready and willing to reach the issue of damages, but plaintiff urged that court not to decide damages. On a claim similar to Count IV(iii) the Appellate Court remanded the case for determination of an appropriate remedy. The Illinois Supreme Court very recently denied leave to appeal. The state court, having completed trials of this case on the merits, having also conducted hearings on preliminary injunctions, and now having the case on remand, is more familiar with the facts of the case than this court. Moreover, state law claims are more appropriately resolved in state court. Therefore, Counts IV(iii) and IV(iv) are dismissed without prejudice.

IT IS THEREFORE ORDERED that:

(1) Counts V, VI, and VII of the Amended Complaint are voluntarily dismissed with prejudice.

(2) Defendants' motion for summary judgment is granted in part and denied in part.

(3) Counts I, II, III, IV(i), IV(ii), and VIII of the Amended Complaint are dismissed with prejudice.

(4) Counts IV(iii) and IV(iv) of the Amended Complaint are dismissed without prejudice.

(5) The Clerk of the Court is directed to enter judgment in favor of all defendants and against plaintiff without prejudice as to Counts IV(iii) and IV(iv) and with prejudice as to all other Counts of the Amended Complaint. Plaintiff shall pay costs to defendants Information Resources, Inc. and John Malec. Defendants Gian Fulgoni and William C. Walter shall bear their own costs and plaintiff shall bear all his own costs.

---

wire fraud, plaintiff refers to "extortionistic demands." *See* 18 U.S.C. § 1961(1)(A); 18 U.S.C. § 1961(1)(B) (incorporating 18 U.S.C. § 1951). Since the argument is not developed, the court does not consider whether extortion as a RICO predicate act has been shown. Since the argument is not developed, the court also does not

consider whether a "scheme to defraud [defendants'] employees of money they could have earned by selling their services to IRI's competitors by unlawfully restraining the labor market" has been shown and would constitute wire or mail fraud.