DOUGLAS McGREW, Plaintiff-Appellant, v. HEINOLD COMMODITIES, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 85—2085

Opinion filed August 19, 1986.

Jeffrey D. Frederick, of Johnson, Frank, Frederick & Walsh, of Urbana, for appellant.

Michael Elman, of Chicago, for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff, Douglas McGrew, appeals from the dismissal of eight counts of his amended complaint against a former creditor and the creditor's attorney as a result of their issuance of garnishment summonses when he owed them no money. We affirm in part and dismiss the appeal in part.

On or about March 15, 1982, plaintiff opened a commodities account with defendant Heinold Commodities, upon which he traded without incident until about October 21, 1982, when his account was alleged to have a deficiency of $1,097.73. Not having received payment, defendants filed suit against plaintiff on January 5, 1983. Plaintiff was served with a summons having a return date of February 3, 1983. On January 20, 1983, plaintiff sent a check to defendant Heinold for $1,125, which was credited to his account on January 24, 1983, leaving a balance of $3.86. Heinold mailed statements to plaintiff reflecting this payment. Plaintiff later closed his account with Heinold and the balance of $3.86 was refunded.

On February 3, 1983, codefendant Shepherd, as attorney for Heinold, filed a motion for default judgment. On June 16, 1983, judgment was entered against plaintiff for $1,523.95, including attorney fees, based upon the affidavits of Shepherd and William Sevetson, Heinold's secretary and director of compliance. Shepherd instituted garnishment proceedings upon the default judgment on July 11, 1983. He filed affidavits to support issuance of the summonses, and served garnishment summonses on plaintiff's employer and bank. Plaintiff's bank responded to the garnishment interrogatories eight days later.

Plaintiff learned of the garnishments on July 16, 1983, after returning from vacation, and he immediately contacted defendants. On July 25, 1983, a release of judgment was filed and copies were mailed to plaintiff's bank and his employer.. One year later, plaintiff filed this lawsuit against Heinold and Shepherd. In response to defendants' mo-

tions to strike and dismiss, plaintiff filed an amended complaint containing 10 counts.

In count I of the amended complaint, plaintiff alleged that defendant Heinold Commodities wrongfully caused the issuance of a wage-deduction summons in violation of section 12—817 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 12—817). Plaintiff claimed that as a proximate result of service of the summons on his employer his business and personal reputations at his place of employment were injured. He added that he experienced "physical and mental pain and suffering and emotional distress" which required medical treatment and would continue to generate medical expenses in the future. Plaintiff also claimed that he incurred attorney fees and other expenses in attempting to stop the garnishment. Plaintiff prayed for damages in excess of $15,000 plus attorney fees and costs. This count is one of two counts presently pending in the trial court.

In count II, plaintiff realleged the facts and statutory violation asserted in count I (except for the specific allegations of damages) and charged that defendant Heinold Commodities knew or should have known that plaintiff's account had been paid in full "but despite said knowledge, intentionally, recklessly, willfully and wantonly caused garnishment summons to be issued upon plaintiff's employer." Plaintiff prayed for $250,000 in punitive and exemplary damages from Heinold, plus interest, reasonable attorney fees and costs and expenses. The circuit court dismissed count II.

Count III was virtually identical to count I, except that it was directed against defendant Shepherd. This count also remains pending in the trial court. Count IV was identical to count II in seeking punitive and exemplary damages, but it was directed against defendant Shepherd. It was dismissed by the circuit court.

Count V charged that Heinold had an "ulterior purpose for the use of regular court process *** to harass and cause economic injury to the plaintiff and damage to his personal and professional reputation." Plaintiff added that Heinold's action in obtaining either garnishment summons was "not proper in the regular prosecution of its lawsuit" because plaintiff had paid his account nearly six months earlier. Plaintiff reasserted the same injuries alleged in count I and added that "as a direct and proximate result of [Heinold's] abuse of process" he was denied the use of his funds at the bank, and his reputations with the bank and his employer were injured.

Count VI essentially repeated the allegations in count V but added that Heinold "knew or should have known that Plaintiff's account had been paid in full *** but despite said knowledge, intentionally, reck-

lessly, willfully and wantonly caused garnishment summonses to be issued." It concludes, "Plaintiff is entitled to punitive and exemplary damages against the defendant HEINOLD COMMODITIES, INC. in the sum of $250,00 for their willful and wanton abuse of process." In addition, it prays for interest, attorney fees, costs and expenses.

Counts VII and VIII assert similar claims against defendant Shepherd, the latter count being for punitive damages.

Counts IX and X are similarly directed against Heinold and Shepherd, respectively. They incorporate by reference the basic factual allegations in previous counts and add:

"6. That the aforesaid Summons for garnishment and Wage Deduction Summons were publicized matters by the defendant which invaded the Plaintiff's right to privacy by placing him in a false light before his peers, and the general public in that the aforesaid publicized matter conveyed the impressions that Plaintiff failed to pay his debts, allowed a default judgment to be entered against him, and ignored the process of the court.

7. That said publicized matter was false and untrue and was made without the consent of the Plaintiff.

8. That said false light in which the Plaintiff was placed would be and is highly offense to a reasonable person.

9. That the Defendant had knowledge of, or acted in reckless disregard to, the falsity of the aforesaid publicized matter and the false light in which Plaintiff was placed and was made by the Defendant with actual malice and willful intent to injure the Plaintiff."

Plaintiff claims actual damages of greater than $15,000, as a proximate result of the invasion of his right to privacy, and prayed for $250,000 in punitive damages plus attorney fees, costs, interest and expenses.

On June 10, 1985, after two hearings, the circuit judge entered an order dismissing all but counts I and III of plaintiff's complaint. The judge certified, under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), that there was no just reason to delay appeal of his dismissal order, and plaintiff filed a timely notice of appeal. Defendants subsequently filed an answer to the remaining counts and asserted a counterclaim for attorney fees. Plaintiff's motion to dismiss the counterclaim was still pending when this case was briefed and argued.

Although the circuit judge certified his order for immediate appeal under Rule 304(a), such a finding does not guarantee that the matter is appealable. To be appealable under Rule 304(a), a judgment must still be final. *Waste Management of Illinois, Inc. v. Environmen-*

*tal Protection Agency* (1985), 137 Ill. App. 3d 619, 625, 484 N.E.2d 1128, 1132; *Johnson v. Northwestern Memorial Hospital* (1979), 74 Ill. App. 3d 695, 697, 393 N.E.2d 712, 713.

■ An order is final if it disposes of the rights of the parties either on the entire controversy or some definite and separate part of it. (*South Chicago Community Hospital v. Industrial Com.* (1969), 44 Ill. 2d 119, 121, 254 N.E.2d 448, 449.) The mere fact that the dismissed counts and the remaining counts arise from the same occurrence is not fatal to an appeal. (See *Carlson v. Moline Board of Education* (1984), 124 Ill. App. 3d 967, 969-70, 464 N.E.2d 1239, 1241-42.) For example, in *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935, our supreme court held that dismissal of an indemnity claim was final and appealable although a contribution claim based on the same accident was still pending. The court noted that "when the bases for recovery under the counts that are dismissed are different than those under the counts left standing, the dismissal is appealable *because it disposes of a distinct cause of action.*" (Emphasis added.) (99 Ill. 2d 344, 348, 459 N.E.2d 935, 938. See also *Freeman v. White Way Sign & Maintenance Co.* (1980), 82 Ill. App. 3d 884, 890-91, 403 N.E.2d 495, 500.) In the present case, with the exception of counts II and IV, the theories of recovery in the appealed counts are different from those that remain and the causes of action distinct. We therefore conclude that counts V through X are final and appealable.

■ On the other hand, counts II and IV, seeking punitive damages for the wage garnishment, are based on the same violations of section 12—817 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 12—817) that are alleged in counts I and III. Counts I and III are still pending in the circuit court. The parties have not cited, and our research has not uncovered, any cases discussing whether dismissal of punitive damage claims are separately appealable under Supreme Court Rule 304(a), when claims for compensatory damages based on the same injury and same theory of recovery remain in the circuit court. Appealability depends upon the substance rather than the form of the claims asserted (*Cunningham v. Brown* (1961), 22 Ill. 2d 23, 25, 174 N.E.2d 153, 154); accordingly, the fact that the actual and punitive damage claims are stated in different counts is not controlling.

In *Palatine National Bank v. Charles W. Greengard Associates, Inc.* (1983), 119 Ill. App. 3d 376, 456 N.E.2d 635, the trial court struck claims for damages based on lost profits and attorney fees expended by plaintiffs in an effort to mitigate an alleged breach of contract by defendant. On appeal, defendants argued that the order striking only portions of the elements of damages did not fully dispose of the breach

of contract action stated in the count, and therefore was not a final, appealable order. The Second District Appellate Court agreed, noting that, although the trial judge had made the Rule 304(a) finding, the order left the cause of action under the contract theory still pending and undecided by the trial court. (119 Ill. App. 3d 376, 380-81, 456 N.E.2d 635, 639.) The court dismissed that portion of the appeal for lack of appellate jurisdiction.

■ Similarly in the present case, counts II and IV are based on the same theory of recovery as counts I and III, respectively, and involve only an element of damages—punitive damages. However, Illinois, like most States, does not recognize a cause of action for punitive damages alone. (*Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 309-10, 393 N.E.2d 1223, 1233.) Punitive damages can only be awarded when there is an award of compensatory damages. (*Ecker v. Big Wheels, Inc.* (1985), 136 Ill. App. 3d 651, 655, 483 N.E.2d 639, 642; *Rhodes v. Uniroyal, Inc.* (1981), 101 Ill. App. 3d 328, 330-31, 427 N.E.2d 1380, 1382.) Admittedly, punitive damages require a showing that is not required for compensatory damages—*i.e.*, intentional or wilful and wanton conduct (see *Home Savings & Loan Association v. Schneider* (1985), 108 Ill. 2d 277, 284-85, 483 N.E.2d 1225, 1228—and a decision on the availability of punitive damages in this case does not affect the claims that are currently pending in the circuit court. However, under the majority rule, followed in Illinois, punitive damages represent a type of relief rather than an independent cause of action. (See Ghiardi & Kircher, *Punitive Damages* secs. 6.16, 6.17, 12.07 (1983).) We conclude that the dismissal order as to counts II and IV of the instant complaint is not final, and the appeal should be dismissed as to those two counts.

■ Plaintiff argues, in the alternative, that he stated a separate claim for "willful and wanton misconduct" in counts II and IV. Plaintiff's argument must fail. In counts II and IV, plaintiff realleged the first seven paragraphs of count I and III respectively, which charged violations of section 12—817 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 12—817). Plaintiff then added that defendants "willfully and wantonly" caused the garnishment summons to be issued. These words seem to have been employed simply as a predicate for punitive damages, rather than as a distinct tort. (See *Knox College v. Celotex Corp.* (1983), 117 Ill. App. 3d 304, 308, 453 N.E.2d 8, 11. See also Ill. Rev. Stat. 1985, ch. 110, par. 2—603(b) (stating, "Each separate cause of action upon which a separate recovery might be had shall be stated in a separate count").) We will not salvage plaintiff's appeal by reading words into the complaint that are not there. (See

*Morrow v. L. A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 97-98, 492 N.E.2d 181, 185-86.) We cannot consider the appeal from dismissal of counts II and IV on the theory that it asserts a common law tort action rather than the nonfinal statutory claim that is actually alleged. Consequently, appeal from those counts must be dismissed.

■ Plaintiff next argues that he stated a claim for "abuse of process" in counts V and VII, which was characterized as "willful and wanton" in counts VI and VIII and joined with prayers for punitive damages. The circuit court dismissed all four counts.

Two elements are required to plead a cause of action for abuse of process: (1) the existence of an ulterior purpose or motive for the use of regular court process, and (2) an act in the use of process not proper in the regular prosecution of a suit. (*Executive Commercial Services, Ltd. v. Daskalakis* (1979), 74 Ill. App. 3d 760, 767, 393 N.E.2d 1365, 1371, *cert. denied* (1980), 446 U.S 967, 64 L. Ed. 2d 826, 100 S. Ct. 2945; *Ammons v. Jet Credit Sales, Inc.* (1962), 34 Ill. App. 2d 456, 462, 181 N.E.2d 601, 603.) "The test for sufficiency of the allegation pertaining to the second element is whether process has been used to accomplish some result which is beyond the purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally be compelled to do." (*Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 816, 458 N.E.2d 1120, 1128.) Defendants note that the garnishment summonses in this case were used to collect money, the very purpose for which the process was created. According to defendants, the validity of the underlying debt is simply irrelevant to an abuse of process claim. We agree.

■ In *Cartwright v. Wexler, Wexler & Heller, Ltd.* (1977), 53 Ill. App. 3d 983, 369 N.E.2d 185, a default judgment for rent was entered against former tenants and wage garnishment proceedings were instituted, although the landlord had relet the apartment. Plaintiffs subsequently filed suit against the landlord and related defendants claiming that some of them knew sufficient facts to indicate that the plaintiffs had not been liable for rent. Although the plaintiffs had not owed the amount of judgment or garnishment, the appellate court held that the complaint failed to state a cause of action for abuse of process because it did not indicate that defendants did anything more than institute a lawsuit and attempt to obtain satisfaction of judgment through regular procedures for garnishment. (See also *March v. Cacioppo* (1962), 37 Ill. App. 2d 235, 243, 185 N.E.2d 397, 401.) Similarly, all that plaintiff has alleged in the instant case is that defendants instituted garnishment proceedings when there was no debt. He has not alleged that the garnishment summonses were used for an improper purpose *after* they

were issued. See *Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 815, 458 N.E.2d 1120, 1128; see also *Alberto-Culver Co. v. Andrea Dumon, Inc. (N.D. Ill. 1969)*, 295 F. Supp. 1155, 1160.

Plaintiff alleged, "Defendant[s] had an ulterior purpose for the use of regular court process, that being to harass and cause economic injury to the Plaintiff and damage to his personal and professional reputation." Plaintiff argues that because his abuse of process action is based on defendants' state of mind and their intention to harass, the trial court erred in dismissing counts V through VII before allowing discovery. However, the mere existence of an ulterior motive in performing an otherwise proper act does not constitute abuse of process. (*Sutton v. Hofeld* (1983), 118 Ill. App. 3d 65, 69-70, 454 N.E.2d 681, 684; *Kurek v. Kavanagh, Scully, Sudow, White & Frederick* (1977), 50 Ill. App. 3d 1033, 1038, 365 N.E.2d 1191, 1195.) In *Ewert v. Wieboldt Stores, Inc.* (1976), 38 Ill. App. 3d 42, 347 N.E.2d 242, for example, the First District Appellate Court rejected similar allegations of a conspiracy "to cause the issuance of process for the sole purpose of harassing and annoying" a corporate manufacturer of harness devices. The manufacturer had been sued for work-related injuries sustained during a fall. However, the company was not in existence at the time of the accident and it therefore countersued for abuse of process. The appellate court held that the countercomplaint failed to state a claim for abuse of process because no improper use of process had been charged, and no damage was asserted other than that necessarily incident to the filing of a lawsuit. 38 Ill. App. 3d 42, 44, 347 N.E.2d 242, 244.

Institution of frivolous proceedings is insufficient conduct to support a claim of abuse of process. (*Ewert v. Wieboldt Stores, Inc.* (1976), 38 Ill. App. 3d 42, 44, 347 N.E.2d 242, 243-44; *Ammons v. Jet Credit Sales, Inc.* (1962), 34 Ill. App. 2d 456, 462-63, 181 N.E.2d 601, 603.) In contrast, the tort of malicious prosecution (or malicious use of process) is designed to remedy injuries from proceedings that are initiated without probable cause. (See *Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 815, 458 N.E.2d 1120, 1127; *Ammons v. Jet Credit Sales, Inc.* (1962), 34 Ill. App. 2d 456, 461, 181 N.E.2d 601, 603.) However, plaintiff has not alleged this tort, and we take no position on the merits of any such claim in this case. But see *Rich v. Baldwin* (1985), 133 Ill. App. 3d 712, 714-19, 479 N.E.2d 361, 362-65; *Smith v. Aaron, Aaron, Schimberg & Hess* (1983), 112 Ill. App. 3d 653, 657-58, 445 N.E.2d 67, 70; *Savage v. Seed* (1980), 81 Ill. App. 3d 744, 747-50, 401 N.E.2d 984, 987-89 (all discussing whether voluntary dismissal of prior proceedings defeats subsequent claim of malicious prosecution).

■ Finally, plaintiff argues that the trial court erred in dismissing counts IX and X, which are based on invasion of privacy. The Restatement (Second) of Torts recognizes four actionable invasions of the right of privacy: (a) unreasonable intrusion upon one's seclusion, (b) appropriation of one's name or likeness, (c) unreasonable publicity given to one's private life, or (d) publicity that unreasonably places one in a false light before the public. (Restatement (Second) of Torts sec. 652A (1977).) Plaintiff alleges that defendants' actions placed him in a false light. The false light tort is described more fully in section 652E:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) of Torts sec. 652E (1977).

There are no decisions by courts of this State explicitly recognizing a tort for placing one in a "false light," although Illinois has recognized other forms of invasion of privacy, such as unauthorized use of a person's name or likeness for commercial purposes (*Bureau of Credit Control v. Scott* (1976), 36 Ill. App. 3d 1006, 1009, 345 N.E.2d 37, 40; *Smith v. WGN, Inc.* (1964), 47 Ill. App. 2d 183, 185-86, 197 N.E.2d 482, 484), and public disclosure of private debts (*Midwest Glass Co. v. Stanford Development Co.* (1975), 34 Ill. App. 3d 130, 135, 339 N.E.2d 274, 278 (*dictum*)). In *Douglass v. Hustler Magazine, Inc.* (7th Cir. 1985), 769 F.2d 1128, *cert. denied* (1986), 475 U.S. 1094, 89 L. Ed. 2d 892, 106 S. Ct. 1489, the Seventh Circuit concluded that the Illinois Supreme Court would recognize a false-light tort. The court stated:

"In *Leopold v. Levin*, 45 Ill. 2d 434, 259 N.E.2d 250 (1970), the only false-light case decided by the Illinois Supreme Court, Leopold, the surviving defendant in the Leopold and Loeb murder case, brought suit against the author of a book about the case, charging that the book (*Compulsion*) placed Leopold in a false light. The Illinois Supreme Court held that Leopold had no cause of action. He had forfeited any right of privacy by the notoriety of his crime; the book was represented to the public as a fictionalized rather than literal account; Leopold was a public figure; and to award tort damages would have unduly limited freedom of expression. These points would have been unnecessary to make if the court had thought that the false-light tort

was not part of the common law of Illinois." (769 F.2d 1128, 1133.)

The Seventh Circuit went on to hold that model Robyn Douglass stated such a claim under Illinois law against Hustler magazine when nude pictures of her, posed for Playboy magazine appeared in Hustler without her permission. She had asserted that Hustler cast her in a false light because it had insinuated that she was a lesbian and that she was the kind of person willing to be shown naked in Hustler, which was deemed to be more offensive than Playboy. On the other hand, in *Melvin v. Burling* (1986), 141 Ill. App. 3d 786, 490 N.E.2d 1011, the Third District Appellate Court reversed a dismissal of a claim for unreasonable intrusion on plaintiffs' seclusion. The suit was based on defendant's acts in ordering merchandise in plaintiffs' names, but without their authorization, which was followed by demands for payment. In considering the case, the court reviewed the diverse branches of privacy law and concluded that despite the decision in *Douglass*, "the false light area of privacy law has not, as yet, been judicially accepted in Illinois as a cause of action." 141 Ill. App. 3d 786, 787-88, 490 N.E.2d 1011, 1012.

In the present case we need not reach the question whether a cause of action for false light exists in Illinois. The Restatement (Second) of Torts, section 652F (1966) indicates that the rules on absolute privilege in defamation actions apply to invasion of privacy suits as well. Plaintiff's complaint alleges *"the aforesaid Summons for garnishment and Wage Deduction Summons* were publicized matters by the Defendant which invaded the Plaintiff's right of privacy by placing him in a false light before his peers and the general public." (Emphasis added.) Thus it is clear that he is complaining about statements and inferences arising from the summonses themselves.

Garnishment and wage deduction summonses are court processes. (See Ill. Rev. Stat. 1985, ch. 110, pars. 12—701, 12—805.) Anything said or written in a legal proceeding is protected from defamation actions by absolute privilege. (*Emery v. Kimball Hill, Inc.* (1983), 112 Ill. App. 3d 109, 112-14, 445 N.E.2d 59, 61-62; *Anderson v. Matz* (1978), 67 Ill. App. 3d 175, 178-79, 384 N.E.2d 759, 761. See also *Libco Corp. v. Adams* (1981), 100 Ill. App. 3d 314, 426 N.E.2d 1130 (correspondence from one attorney to another pertinent to pending litigation is privileged).) Every jurisdiction that has considered the question has concluded that this privilege also applied to "false light" suits. (See, *e.g., Froelich v. Adair* (1973), 213 Kan. 357, 359, 516 P.2d 993, 996; *Devlin v. Greiner* (1977), 147 N.J. Super. 446, 463-64, 371 A.2d 380, 390; *Lee v. Nash* (1983), 65 Or. App. 538, 542, 671 P.2d 703, 706; *Wolfe*

*v. Arroyo* (Tex. Civ. App. 1976), 543 S.W.2d 11. See also Restatement (Second) of Torts sections 586, 587, 652F (1977). But see *Montgomery Ward v. Larragoite* (1970), 81 N.M. 383, 467 P.2d 399 (affirming a judgment for invasion of privacy arising from service of process plus other acts; the court did not discuss the privilege).) This privilege exists to ensure free and open expression in the judicial system, and to protect those who legitimately wish to assert their legal rights from fear of retaliation.

■■ ■ Although defendants did not raise this issue in their briefs or in the trial court, we can uphold a dismissal on any grounds appearing in the record. (*White Fence Farm, Inc. v. Land & Lakes Co.* (1981), 99 Ill. App. 3d 234, 239, 424 N.E.2d 1370, 1374.) Moreover, dismissal for failure to state a cause of action can be considered for the first time on appeal. (*Larkin v. Howlett* (1974), 19 Ill. App. 3d 343, 345, 311 N.E.2d 367, 369; *Psyhogios v. Village of Skokie* (1972), 4 Ill. App. 3d 186, 190-91, 280 N.E.2d 552, 555-56.) Plaintiffs have alleged no defamatory acts other than procurement and service of garnishment summonses. The privilege arising from statements connected with judicial proceedings is absolute. The grounds for this privilege appear on the face of the complaint, and can be considered in a motion to dismiss for failure to state a cause of action. (*Emery v. Kimball Hill, Inc.* (1983), 112 Ill. App. 3d 109, 112-14, 445 N.E.2d 59, 61-62; *Macie v. Clark Equipment Co.* (1972), 8 Ill. App. 3d 613, 615-16, 290 N.E.2d 912, 913-14; *Sarelas v. Alexander* (1971), 132 Ill. App. 2d 380, 382-85, 270 N.E.2d 558, 559-62.) It need not be asserted by way of affirmative defense. (See *Dilling v. Illinois Publishing & Printing Co.* (1950), 340 Ill. App. 303, 307, 91 N.E.2d 635, 637.) No state of facts can be proved under this pleading for which plaintiff could obtain relief on his false-light claim. (*Krautstrunk v. Chicago Housing Authority* (1981), 95 Ill. App. 3d 529, 534, 420 N.E.2d 429, 433.) We therefore affirm the dismissal of counts IX and X.

Appeal from the judgment on counts II and IV is dismissed for lack of appellate jurisdiction. In all other respects, the decision of the circuit court is affirmed.

Affirmed in part, dismissed in part.

STAMOS and HARTMAN, JJ., concur.