**Antonio C. and Diana G. MASTROBUONO, Plaintiffs,**

**v.**

**SHEARSON LEHMAN HUTTON INC., Nick DiMinico, Richard F. Benzer, and Mark Stevenson, Defendants.**

No. 89 C 0773.

United States District Court, N.D. Illinois, E.D.

Feb. 9, 1993.

John Daniel O'Malley, Loyola University of Chicago, James L. Fox, Abramson & Fox, John Daniel O'Malley, Jr., Chicago, IL, for plaintiffs.

Thomas M. Knepper, Therese Marie Obringer, Neal, Gerber & Eisenberg, Chicago, IL, for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the motion of defendants Shearson Lehman Hutton Inc. ("Shearson") and Nick DiMinico ("DiMinico") to partially vacate an arbitration award. For the following reasons, the motion is granted.

## FACTS

In October, 1985, the plaintiffs, Antonio C. Mastrobuono and Diana G. Mastrobuono (the "Mastrobuonos"), opened a brokerage account with Shearson. The Mastrobuonos' account was solicited by DiMinico, who was the registered representative servicing their account. Upon opening their account, the Mastrobuonos entered into a Client Agreement (the "Agreement") with Shearson. Paragraph 13 of the Agreement stated that any controversy relating to the Mastrobuonos' account would be settled by arbitration and would be governed by New York law.

In January, 1989, the Mastrobuonos filed a lawsuit against the defendants, claiming that their account had been subjected to unauthorized trading, churning, and margin exposure. The Mastrobuonos' complaint contained both federal and state law claims, including requests for punitive damages on the latter. After having been ordered by this court to arbitrate their dispute pursuant to paragraph 13 of the Agreement, the Mastrobuonos commenced arbitration proceedings before the National Association of Securities Dealers, Inc. ("NASD").

Arbitration hearings were conducted in August and September, 1992. On October 13, 1992, the arbitration panel executed their award, awarding the Mastrobuonos the sum of $115,274 in commissions and $44,053 in margin interest "as satisfaction for their claims." The arbitrators also assessed punitive damages against Shearson and DiMinico in the amount of $400,000. Shearson has paid the compensatory damages awarded by the arbitration panel; with regard to the punitive damages, however, Shearson and DiMinico challenge the arbitrators' authority to bestow such an award.

## DISCUSSION

The Agreement specifically provides in paragraph 13 that: "[t]his agreement ... shall be binding on the undersigned ... and shall be governed by the laws of the State of New York...." As the Seventh Circuit has expressly found, a customer of a brokerage firm who signs an agreement expressly governed by New York law has contractually waived any potential award of punitive damages in arbitration. *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 337–39 (7th Cir.1984) ("the plain wording of the arbitration clause [meant] losing the possibility of obtaining punitive damages".... "which are not permitted in arbitration under New York law ..."); *see Baselski v. Paine, Webber, Jackson & Curtis, Inc.*, 514 F.Supp. 535, 543 (N.D.Ill. 1981) (parties to an arbitration agreement governed by the law of the State of New York have contractually waived "right" to punitive damages); *see also Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117 (2d Cir.1991) (New York law prohibits award of punitive damages in arbitration); *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 517 (2d Cir.), (same), *cert. denied,* — U.S. ——, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991); *Melun Indust., Inc. v. Strange*, 1992 WL 8143 (S.D.N.Y. Jan. 10, 1992)

(same); *Shahmirzadi v. Smith Barney, Harris Upham & Co.*, 636 F.Supp. 49, 56 (D.D.C.1985) ("When the plaintiffs executed the Customer's Agreement, they contractually waived their right to punitive damages by agreeing to be governed by arbitration and New York law"); *Thomson McKinnon Securities v. Cucchiella*, 32 Mass.App.Ct. 698, 594 N.E.2d 870 (1992) (same).

█ The New York law that precludes arbitrators from awarding punitive damages is usually identified with the case of *Garrity v. Stuart*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976), which held that the imposition of punitive damages is a power reserved to the state and its courts. The Mastrobuonos argue that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), which was designed to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–220, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985), preempts application of *Garrity*. While the FAA does not contain an express preemptive provision, it has been held to preempt state laws that preclude parties from submitting matters to arbitration. *See Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (FAA preempted state law holding wage actions not arbitrable); *Southland v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (FAA preempts state law precluding arbitration under state franchise act).

█ Although the FAA preempts state laws that require a judicial forum for the resolution of claims that contracting parties have agreed to arbitrate, it does not create any independent rights to arbitrate. Accordingly, the Supreme Court found that enforcing an arbitration agreement's choice-of-law provision in accordance with the terms of that agreement is fully consistent with the goals of the FAA. *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 477, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). In *Volt*, the Supreme Court found that the liberal policy favoring arbitration did not provide any basis for ignoring choice-of-law provisions in arbitration agreements:

> There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration— rules which are manifestly designed to encourage resort to the arbitral process—simply does not offend the rule of liberal construction ... nor does it offend any other policy embodied in the FAA.

*Id.* at 476, 109 S.Ct. at 1254.

In *Barbier v. Shearson Lehman Hutton, Inc.*, the Second Circuit specifically addressed the very same Client Agreement at issue in this case and rejected the argument "that the *Garrity* rule conflicts with federal law and thus is preempted by the FAA." 948 F.2d 117, 121 (1991). Based on the holding in *Volt*, the Second Circuit concluded that the choice-of-law provision of paragraph 13 was not preempted by federal law and that the application of the *Garrity* rule furthered the policy of the FAA by enforcing the terms of the parties' arbitration agreement: "[i]t is apparent from the inclusion of the choice-of-law provision that the parties intended to be bound by *Garrity*, and 'as with any other contract, the parties' intentions control'". *Id.* at 122 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymounth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).

In support of their federal preemption argument, the Mastrobuonos cite a trilogy of cases in which the Supreme Court rejected traditional judicial antipathy to arbitration and, based on the FAA, established the validity of arbitration as a means of resolving disputes. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors*, 473 U.S. 614, 105 S.Ct. 3346; *Byrd*, 470 U.S. 213, 105 S.Ct. 1238. Based on these cases, the Mastrobuonos contend that "the trend has been over-

whelmingly to recognize that punitive damages are arbitrable." Whether punitive damages are arbitrable, however, is not an issue in the underlying dispute. Instead, at issue is whether punitive damages are an available remedy where an arbitration agreement is governed by New York law.

The *Volt* court found that, just as parties can limit the issues which they will arbitrate, so too may they specify the rules under which arbitration will be conducted. *Volt,* 489 U.S. at 477, 109 S.Ct. at 1255. Where the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA. Because the Mastrobuonos agreed to arbitrate their dispute in accordance with the laws of the State of New York, and because the Agreement does not explicitly or by incorporation authorize the award of punitive damages, the remedies available to them are limited by the *Garrity* rule. This limitation gives effect to the contractual rights and expectations of the parties and does not violate the policies codified in the FAA. Accordingly, the punitive damages awarded the Mastrobuonos are vacated pursuant to 9 U.S.C. § 10. *See First Commercial Fin. Group, Inc. v. Baghdoian,* 812 F.Supp. 837 (N.D.Ill.1993) (discussing FAA grounds for vacating an arbitration award).

Subsequent to Shearson and DiMinico's motion to vacate, the Mastrobuonos filed a motion to confirm the arbitration award or, alternatively, to award punitive damages or set a date for trial on the claims for which the imposition of punitive damages is usually allowed. As discussed above, the punitive damages award must be vacated in accordance with the terms of the Agreement's paragraph 13 and the *Garrity* rule; therefore, Mastrobuonos' motion to confirm must be denied.

In support of their request that this court award punitive damages, the Mastrobuonos contend that if New York law prohibits arbitrators from awarding punitive damages, the court could somehow retain jurisdiction over that remedy. By providing that New York law govern their agreement, the Mastrobuonos agreed that the damages available to them would be those awardable by arbitration under New York law. This was not a waiver by the defendants of their FAA-guaranteed right to compel arbitration of this dispute, including the award of damages, *see* 9 U.S.C. § 4 (party has right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement"), but, instead, was the Mastrobuonos' waiver of their potential right to receive punitive damages. Accordingly, the court cannot, in disregard of the FAA, award damages that are precluded by the parties' privately negotiated arbitration agreement. *See Byrd,* 470 U.S. at 219, 105 S.Ct. at 1241.

■ Furthermore, as to whether the Mastrobuonos may separately litigate the remedy of punitive damages, both Illinois and New York law preclude a separate cause of action solely for punitive damages. *See Kemner v. Monsanto,* 217 Ill. App.3d 188, 199, 160 Ill.Dec. 192, 199, 576 N.E.2d 1146, 1153, *app. denied,* 142 Ill.2d 655, 164 Ill.Dec. 918, 584 N.E.2d 130 (1991) ("Illinois does not recognize a cause of action for punitive damages alone"); *McGrew v. Heinold Commodities, Inc.,* 147 Ill.App.3d 104, 110, 100 Ill.Dec. 446, 451, 497 N.E.2d 424, 429 (1986) ("Illinois, like most states, does not recognize a cause of action for punitive damages alone"); *Florsheim v. Travelers Indem. Co.,* 75 Ill. App.3d 298, 309–10, 30 Ill.Dec. 876, 886, 393 N.E.2d 1223, 1233 (1979) (same); *Waltman v. Fahnestock & Co.,* 792 F.Supp. 31, 33 (E.D.Pa.1992) (New York does not provide for a separate cause of action for punitive damages); *Santos v. Security & Law Enforcement Employees, Council 82,* 80 A.D.2d 554, 435 N.Y.S.2d 357, 358 (1981) ("[I]n this state there is no separate cause of action for punitive damages."). Accordingly, the Mastrobuonos' alternative motion to set a date for trial on their "pending claims for punitive damages" must be denied.

## CONCLUSION

For the foregoing reasons, the motion of Shearson and DiMinico to vacate the Mas-

trobuonos' award of punitive damages is granted.

IT IS SO ORDERED.